**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | |
|---|---|
| CELL AND NETWORK SELECTION LLC, §§§ | |
| *Plaintiff*, §§ | |
| v. §§ | |
| BLACKBERRY CORP., DELL, INC., § NOKIA CORP., NOKIA INC., SPRINT § COMMUNICATIONS, INC., T-MOBILE § USA, INC. and VERIZON WIRELESS § TELECOM, INC. | Civil Action No. 6:13-cv-00563-LED |
| § | Jury Trial Demanded |
| *Defendants*. §§ | |

## FIRST AMENDED COMPLAINT

Cell and Network Selection LLC ("CNS"), by and through its attorneys, for its First Amended Complaint against BlackBerry Corp., Dell, Inc., Nokia Corp., Nokia Inc., Sprint Communications, Inc., T-Mobile USA, Inc. and Verizon Wireless Telecom, Inc. (hereinafter collectively, "Defendants"), hereby alleges as follows:

### I.      NATURE OF THE ACTION

1.      This is a patent infringement action to end Defendants' unauthorized and infringing manufacture, use, sale, offering for sale, and/or importation of products and methods incorporating Plaintiff CNS's patented inventions.

2.      CNS holds all substantial rights and interest in and to United States Patent No. 6,195,551 (the "'551 Patent"), issued on February 27, 2001, for "Idle Handoff Controlling Method in Cellular Communication System."   A true and correct copy of the '551 Patent is attached to CNS's Original Complaint as **Exhibit 1**.

3.      Each of the Defendants makes, uses, sells and/or imports infringing products and provides infringing services in violation of the '551 Patent.  Plaintiff CNS seeks injunctive relief to prevent Defendants from continuing infringement of Plaintiff's patent rights.  Plaintiff CNS further seeks monetary damages and prejudgment interest for Defendants' past infringement of the '551 Patent.

## II.      THE PARTIES

4.      Plaintiff CNS is a limited liability company organized and existing under the laws of the State of Texas, with its principal place of business located at 2400 Dallas Parkway, Ste. 200, Plano, TX 75093.

5.      Upon information and belief, Defendant BlackBerry Corp. ("BlackBerry"), formally known as RIM, Corp, is a Delaware corporation with its principal place of business located at 5000 Riverside Drive, Irving, Texas 75039.  BlackBerry's registered agent for service of process in Texas is CT Corporation System, 350 N. St. Paul St., Ste. 2900, Dallas, Texas 75201-4234.  BlackBerry does business within the State of Texas and this District.

6.      Upon information and belief, Defendant Dell, Inc. ("Dell") is a Delaware corporation with its principal place of business located at 1 Dell Way, Round Rock, Texas 78682-7000.  Dell's registered agent for service of process in Texas is Corporation Service Company dba CSC – Lawyers Incorporating Service Company, 211 E. 7th Street, Austin, Texas 78701-3218.  Dell does business within the State of Texas and this District.

7.      Upon information and belief, Defendant Nokia Corporation is a company with its principal place of business at Keilalahdentie 4, P.O. Box 226, Espoo, Finland.  On information and belief, Nokia Corporation is a nonresident of Texas who engages in business in this state, but does not maintain a regular place of business in this state or a designated agent for service of

process in this state.  On information and belief, Nokia Corporation resides in this jurisdiction within the meaning of 28 U.S.C. § 1400(b).  This proceeding arises, in part, out of business done in this state.  Nokia Corporation may be served with process in Finland pursuant to the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents, Article 1, November 15, 1965 T.I.A.S. No. 6638, 20 U.S.T. 361 (U.S. Treaty 1969).  Nokia Corporation regularly conducts and transacts business in Texas, throughout the United States, and within the Eastern District of Texas, itself and/or through one or more subsidiaries, affiliates, business divisions, or business units.

8.      Upon information and belief, Defendant Nokia, Inc. is a corporation existing under the laws of the State of California, with its principal place of business in Sunnyvale, California.  Upon information and belief, Nokia Inc. is a wholly-owned subsidiary of Nokia Corporation, is registered to do business in Texas and has appointed National Registered Agents, Inc., 16055 Space Center, Suite 235, Houston, TX 77062 as its agent for service of process. Nokia, Inc. regularly conducts and transacts business in Texas, throughout the United States, and within the Eastern District of Texas, itself and/or through one or more subsidiaries, affiliates, business divisions, or business units.

9.      Upon information and belief, Defendant Sprint Communications, Inc. ("Sprint") is a Kansas corporation with its principal place of business located at 6200 Sprint Parkway, Overland Park, Kansas, 66251.  Sprint's registered agent for service of process in Texas CT Corporation System, 350 N. St. Paul St., Ste. 2900, Dallas, Texas 78201-4234.  Sprint does business within the State of Texas and this District.

10.     Upon information and belief, Defendant T-Mobile USA, Inc. ("T-Mobile") is a Delaware corporation with its principal place of business located at 12920 SE 38th St., Bellevue,

Washington, 98006.  T-Mobile's registered agent for service of process in Texas is Corporation

Service Company, dba CSC – Lawyers Incorporating Service Company, 211 E. 7th Street, Ste.

620, Austin, Texas 78701-3218.   T-Mobile does business within the State of Texas and this

District

11.     Upon information and belief, Defendant Verizon Wireless Telecom, Inc.

("Verizon") is a Delaware corporation with its principal place of business located at 140 West

Street, New York, New York 10007.  Verizon's registered agent for service of process in Texas

is registered agent for service of process in Texas CT Corporation System, 350 N. St. Paul St.,

Ste. 2900, Dallas, Texas 78201-4234.  Verizon does business within the State of Texas and this

District.

### III.     JURISDICTION AND VENUE

12.     This is an action for patent infringement which arises under the Patent Laws of

the United States, in particular, 35 U.S.C. §§271, 281, 283, 284, and 285.  This Court has

jurisdiction over the subject matter of this action under 28 U.S.C. §§1331 and 1338(a).

13.     This Court has personal jurisdiction over each of the Defendants, and venue is

proper in this Court pursuant to 28 U.S.C. §§1391(b), (c), and 1400.

### IV.     PLAINTIFF'S '551 PATENT

14.     The '551 Patent relates to automated cellular communication systems.   In

accordance with the '551 Patent, a system is provided in which efficient handoff occurs between

multiple base stations with respect to which a portable device such as a cellular handset is in

communication range.  If the mobile device detects a pilot channel signal from another base

station that is sufficiently stronger than that of the current base station and other circumstances

indicate a handoff is advantageous, the mobile device determines that an idle handoff should

occur and effects such a handoff.

15.     CNS holds all substantial rights in and to the '551 Patent, including all rights to recover for all past and future infringements thereof.

## V.     DEFENDANTS' ACTS

**BlackBerry**

16.     BlackBerry provides, makes, uses, sells, offers for sale, and/or distributes infringing systems.  The infringing systems include, for example, LTE (4G) phones and other devices including, but not limited to, the BlackBerry Z10, the BlackBerry Q10, and the BlackBerry Playbook.

17.     The foregoing infringing products include chipsets for communicating in accordance with the LTE protocol.  BlackBerry specifies use of LTE-compliant chipsets having certain characteristics.  The subject chipsets are designed and manufactured to operate in a manner which conforms to relevant portions of the LTE specification and infringes the '551 Patent.  BlackBerry installs those chipsets so as to operate in an infringing manner.  The infringing systems have no substantial non-infringing uses.

18.     The foregoing infringing products include operating characteristics that infringe upon at least one of the claims of the '551 Patent which teaches a cellular transmission handoff between two base stations over a 4G LTE network.  BlackBerry intentionally implements and makes available devices that operate according to relevant LTE standards in a manner that infringes the '551 Patent.  The foregoing infringing products are designed and manufactured to operate over the Sprint, T-Mobile and Verizon LTE networks.

19.     BlackBerry markets certain of its products as conforming to the LTE specification.  Prior to doing so, its tests those products to ensure compliance therewith, and in so doing performs the patented method.

First Amended Complaint

20.     Blackberry controls the manner in which its products operate on an LTE network. In addition, with knowledge of the '551 Patent at least as early as the filing of Plaintiff's original complaint, BlackBerry has actively induced others including its customers to infringe and contributed to the infringement by others of the '551 Patent throughout the United States, knowing that CNS alleges such activities to be infringing.  BlackBerry intends that the ultimate consumers who use the accused devices, will do so in an infringing manner based on how the LTE-standards were implemented by BlackBerry within the devices.

21.     BlackBerry further instructs users to configure and operate the foregoing infringing products in an infringing manner, including in the manner that the devices are used over 4G LTE networks.  With knowledge of the '551 Patent, BlackBerry has provided and continues to provide related services, specifications, instructions, guides, online materials, and technical support for use and the infringing operation of the devices to their customers, who directly infringe through the operation and use of those devices.  BlackBerry also provides support services for their devices, including providing instructions, guides, online materials and technical support.

22.     With knowledge of the '551 Patent, BlackBerry has purposefully and voluntarily placed infringing products in the stream of commerce with the expectation that its products will be purchased by customers in the Eastern District of Texas.

23.     CNS has been and will continue to suffer damages as a result of Defendant's infringing acts unless and until enjoined.

**Dell**

24.     Dell provides, makes, uses, sells, offers for sale, and/or distributes infringing systems.  The infringing systems include, for example, LTE (4G) devices  including, but not

limited to the Dell Wireless 5800 LTE/4G Mobile Broadband Mini-Card, Dell XPS 10 Tablet, Dell XPS 18 Portable All-in-One Desktop, the Dell Latitude series (including, but not limited to Dell Latitude E6420 XFR Fully Rugged Laptop, Dell Latitude E6530 premier laptop, Dell Latitude E6430 premier laptop, Dell Latitude 6430u Ultrabook for Business, Dell Latitude E6330 premier laptop, Dell Latitude E6230 premier laptop, and the Dell Latitude E6430 ATG premier laptop), Dell Vostro 3460, Dell Inspiron 14z Ultrabook (integrated with 5804 LTE) and Vostro V13 laptop.

25.    The foregoing infringing products include chipsets for communicating in accordance with the LTE protocol.  Dell specifies use of LTE-compliant chipsets having certain characteristics.  The subject chipsets are designed and manufactured to operate in a manner which conforms to relevant portions of the LTE specification and infringes the '551 Patent.  Dell installs those chipsets so as to operate in an infringing manner.  The infringing systems have no substantial non-infringing uses.

26.    The foregoing infringing products include operating characteristics that infringe upon at least one claim of the '551 Patent which teaches a cellular transmission handoff between two base stations over a 4G LTE network.  Dell intentionally implements and makes available devices that operate according to relevant LTE standards in a manner that infringes the '551 Patent.  The foregoing infringing products are designed and manufactured to operate over the Verizon LTE networks.

27.    Dell markets certain of its products as conforming to the LTE specification.  Prior to doing so, its tests those products to ensure compliance therewith, and in so doing performs the patented method.

28.    Dell controls the manner in which its products operate on an LTE network.  In

addition, with knowledge of the '551 Patent at least as early as the filing of Plaintiff's original complaint, Dell has actively induced others including its customers to infringe and contributed to the infringement by others of the '551 Patent throughout the United States, knowing that CNS alleges such activities to be infringing.  Dell intends that the ultimate consumers who use the accused devices, will do so in an infringing manner based on how the LTE-standards were implemented by Dell within the devices.

29.     Dell further instructs users to configure and operate the foregoing infringing products in an infringing manner, including in the manner that the devices are used over 4G LTE networks.  With knowledge of the '551 Patent, Dell has provided and continues to provide related services, specifications, instructions, guides, online materials, and technical support for use and the infringing operation of the devices to their customers, who directly infringe through the operation and use of those devices.  Dell also provides support services for their devices, including providing instructions, guides, online materials and technical support.

30.     With knowledge of the '551 Patent, Dell has purposefully and voluntarily placed infringing products in the stream of commerce with the expectation that its products will be purchased by customers in the Eastern District of Texas.

31.     CNS has been and will continue to suffer damages as a result of Defendant's infringing acts unless and until enjoined.

**Nokia**

32.     Nokia Corp. and Nokia Inc. (collectively "Nokia") provides, makes, uses, sells, offers for sale, and/or distributes infringing systems.  The infringing systems include, for example, LTE (4G) devices  including, but not limited to the Nokia Lumia 820, Lumia 822, Lumia 925 and Lumia 928.

33.     The foregoing infringing products include chipsets for communicating in accordance with the LTE protocol.   Nokia specifies use of LTE-compliant chipsets having certain characteristics.   The subject chipsets are designed and manufactured to operate in a manner which conforms to relevant portions of the LTE specification and infringes the '551 Patent.   Nokia installs those chipsets so as to operate in an infringing manner.   The infringing systems have no substantial non-infringing uses.

34.     The foregoing infringing products include operating characteristics that infringe at least one claim of the '551 Patent which teaches a cellular transmission handoff between two base stations over a 4G LTE network.   Nokia intentionally implements and makes available devices that operate according to relevant LTE standards in a manner that infringes the '551 Patent.   The foregoing infringing products are designed and manufactured to operate over the Verizon and T-Mobile LTE networks.

35.     Nokia markets certain of its products as conforming to the LTE specification. Prior to doing so, its tests those products to ensure compliance therewith, and in so doing performs the patented method.

36.     Nokia controls the manner in which its products operate on an LTE network.   In addition, with knowledge of the '551 Patent at least as early as the filing of Plaintiff's First Amended Complaint, Nokia has actively induced others including its customers to infringe and contributed to the infringement by others of the '551 Patent throughout the United States, knowing that CNS alleges such activities to be infringing.   Nokia intends that the ultimate consumers who use the accused devices, will do so in an infringing manner based on how the LTE-standards were implemented by Nokia within the devices.

37.     Nokia further instructs users to configure and operate the foregoing infringing

products in an infringing manner, including in the manner that the devices are used over 4G LTE networks.  With knowledge of the '551 Patent, Nokia has provided and continues to provide related services, specifications, instructions, guides, online materials, and technical support for use and the infringing operation of the devices to their customers, who directly infringe through the operation and use of those devices.  Nokia also provides support services for their devices, including providing instructions, guides, online materials and technical support.

38.     With knowledge of the '551 Patent, Nokia has purposefully and voluntarily placed infringing products in the stream of commerce with the expectation that its products will be purchased by customers in the Eastern District of Texas.

39.     CNS has been and will continue to suffer damages as a result of Defendant's infringing acts unless and until enjoined.

**Sprint**

40.     Sprint provides, makes, uses, sells, offers for sale, and/or distributes infringing systems.  The infringing systems include, for example, LTE (4G) devices  including, but not limited to the Blackberry Q10, Sprint Force, Sprint Flash, Kyocera Torque, Mifi 500LTE, 4g LTE Tri-Fi (AirCard 803S) and Sprint Plug-in-Connect Tri-Mode USB (U770).

41.     The foregoing infringing products include chipsets for communicating in accordance with the LTE protocol.  Sprint specifies use of LTE-compliant chipsets having certain characteristics.  The subject chipsets are designed and manufactured to operate in a manner which conforms to relevant portions of the LTE specification and infringes the '551 Patent.  The infringing systems have no substantial non-infringing uses.

42.     The foregoing infringing products include operating characteristics that infringe upon at least one claim of the '551 Patent which teaches a cellular transmission handoff between

two base stations over a 4G LTE network.  Sprint intentionally implements and makes available devices that operate according to relevant LTE standards in a manner that infringes the '551 Patent.  The foregoing infringing products are designed and manufactured to operate over the Sprint LTE networks.

43.     Sprint markets certain of its products as conforming to the LTE specification. Prior to doing so, its tests those products to ensure compliance therewith, and in so doing performs the patented method.

44.     Sprint controls the manner in which the accused products operate on an LTE network.  In addition, with knowledge of the '551 Patent at least as early as the filing of Plaintiff's original  complaint, Sprint has actively induced others including its customers to infringe and contributed to the infringement by others of the '551 Patent throughout the United States, knowing that CNS alleges such activities to be infringing.  Sprint intends that its customers use the accused devices in an infringing manner in that the devices are designed and operated in conformity with the relevant portions of the LTE specification which infringe upon the claims of the '551 Patent.

45.     Sprint further instructs users to configure and operate the foregoing infringing products in an infringing manner, including in the manner that the devices are used over 4G LTE networks.  With knowledge of the '551 Patent, Sprint has provided and continues to provide related services, specifications, instructions, guides, online materials, and technical support for use and the infringing operation of the devices to their customers, who directly infringe through the operation and use of those devices.  Sprint also provides support services for their devices, including providing instructions, guides, online materials and technical support.

46.     On information and belief, Sprint has had knowledge of the '551 Patent at least as

early as December 5, 2007, when its U.S. Patent No. 7,313,398 issued citing the '551 Patent on its face.

47.     With knowledge of the '551 Patent, Sprint has purposefully and voluntarily placed infringing products in the stream of commerce with the expectation that its products will be purchased by customers in the Eastern District of Texas.

48.     CNS has been and will continue to suffer damages as a result of Defendant's infringing acts unless and until enjoined.

**T-Mobile**

49.     T-Mobile provides, makes, uses, sells, offers for sale, and/or distributes infringing systems.  The infringing systems include, for example, LTE (4G) devices including, but not limited to the BlackBerry Z10, BlackBerry Q10, T-Mobile Sonic 2.0 and the Nokia Lumia 820 and Lumia 925.

50.     The foregoing infringing products include chipsets for communicating in accordance with the LTE protocol.  T-Mobile specifies use of LTE-compliant chipsets having certain characteristics.  The subject chipsets are designed and manufactured to operate in a manner which conforms to relevant portions of the LTE specification and infringes the '551 Patent.  The infringing systems have no substantial non-infringing uses.

51.     The foregoing infringing products include operating characteristics that infringe upon at least one claim of the '551 Patent which teaches a cellular transmission handoff between two base stations over a 4G LTE network.  T-Mobile intentionally implements and makes available devices that operate according to relevant LTE standards in a manner that infringes the '551 Patent.  The foregoing infringing products are designed and manufactured to operate over the T-Mobile LTE networks.

52.     T-Mobile markets certain of its products as conforming to the LTE specification. Prior to doing so, its tests those products to ensure compliance therewith, and in so doing performs the patented method.

53.     T-Mobile controls the manner in which the accused products operate on an LTE network.  In addition, with knowledge of the '551 Patent at least as early as the filing of Plaintiff's original  complaint, T-Mobile has actively induced others including its customers to infringe and contributed to the infringement by others of the '551 Patent throughout the United States, knowing that CNS alleges such activities to be infringing.  T-Mobile intends that its customers use the accused devices in an infringing manner in that the devices are designed and operated in conformity with the relevant portions of the LTE specification which infringe upon the claims of the '551 Patent.

54.     T-Mobile further instructs users to configure and operate the foregoing infringing products in an infringing manner, including in the manner that the devices are used over 4G LTE networks.  With knowledge of the '551 Patent, T-Mobile has provided and continues to provide related services, specifications, instructions, guides, online materials, and technical support for use and the infringing operation of the devices to their customers, who directly infringe through the operation and use of those devices.  T-Mobile also provides support services for their devices, including providing instructions, guides, online materials and technical support.

55.     With knowledge of the '551 Patent, T-Mobile has purposefully and voluntarily placed infringing products in the stream of commerce with the expectation that its products will be purchased by customers in the Eastern District of Texas.

56.     CNS has been and will continue to suffer damages as a result of Defendant's infringing acts unless and until enjoined.

**<u>Verizon</u>**

57.     Verizon provides, makes, uses, sells, offers for sale, and/or distributes infringing systems.  The infringing systems include, for example, LTE (4G) devices  including, but not limited to the BlackBerry Z10, BlackBerry Q10, Casio G'zOne Commando, Jetpack 4G LTE Mobile Hotspot 890L, Jetpack 4G LTE Mobile Hotspot MiFi 4620L, Jetpack 4G LTE Mobile Hotspot MiFi 5510L, Dell Latitude Series, X720 - 4G LTE 2-in-1 Express Data Card, Compaq Mini CQ10–688nr Netbook, HP Pavilion dm1-3010nr, HP EliteBook 8470p, HP Elitebook series, Novatel USB Modem 551L (Ovation), Panasonic Toughbook 31, Panasonic Toughbook 53 Semi-Rugged Notebook, Toughbook 52, Toughbook 19, Toughbook C1, Toughbook F9, Google Chromebook Pixel, Getac V200, Getac S400 SWM144, Getac V100, Getac B300, Nokia Lumia 822, Nokia Lumia 928, Verizon Mi-Fi 4510L, and Verizon 4G LTE Router (4G LTE Mobile Broadband N300 WiFi Router MBR1515).

58.     The foregoing infringing products include chipsets for communicating in accordance with the LTE protocol.  Verizon specifies use of LTE-compliant chipsets having certain characteristics.  The subject chipsets are designed and manufactured to operate in a manner which conforms to relevant portions of the LTE specification and infringes the '551 Patent.  The infringing systems have no substantial non-infringing uses.

59.     The foregoing infringing products include operating characteristics that infringe upon at least one claim of the '551 Patent which teaches a cellular transmission handoff between two base stations over a 4G LTE network.  Verizon intentionally implements and makes available devices that operate according to relevant LTE standards in a manner that infringes the '551 Patent.  The foregoing infringing products are designed and manufactured to operate over the Verizon LTE networks.

60.     Verizon markets certain of its products as conforming to the LTE specification. Prior to doing so, its tests those products to ensure compliance therewith, and in so doing performs the patented method.

61.     Verizon controls the manner in which the accused products operate on an LTE network.  In addition, with knowledge of the '551 Patent at least as early as the filing of Plaintiff's original  complaint, Verizon has actively induced others including its customers to infringe and contributed to the infringement by others of the '551 Patent throughout the United States, knowing that CNS alleges such activities to be infringing.  Verizon intends that its customers use the accused devices in an infringing manner in that the devices are designed and operated in conformity with the relevant portions of the LTE specification which infringe upon the claims of the '551 Patent.

62.     Verizon further instructs users to configure and operate the foregoing infringing products in an infringing manner, including in the manner that the devices are used over 4G LTE networks.  With knowledge of the '551 Patent, Verizon has provided and continues to provide related services, specifications, instructions, guides, online materials, and technical support for use and the infringing operation of the devices to their customers, who directly infringe through the operation and use of those devices.  Verizon also provides support services for their devices, including providing instructions, guides, online materials and technical support.

63.     On information and belief, Verizon has had knowledge of the '551 Patent at least as early as March 19, 2002, when its U.S. Patent No. 6,360,098 issued citing the '551 Patent on its face.

64.     With knowledge of the '551 Patent, Verizon has purposefully and voluntarily placed infringing products in the stream of commerce with the expectation that its products will

be purchased by customers in the Eastern District of Texas.

65.     CNS has been and will continue to suffer damages as a result of Defendant's infringing acts unless and until enjoined.

## VI.     WILLFULNESS

66.     CNS alleges upon information and belief that Defendants Sprint and Verizon have knowingly or with reckless disregard willfully infringed the '551 Patent.  Defendants Sprint and Verizon have had knowledge of the Patents as alleged above, having been advised of the existence and substance of the '551 Patent by the United States Patent & Trademark Office. Defendants Sprint and Verizon acted with knowledge of the '551 Patent and despite an objectively high likelihood that their actions constituted infringement of CNS's valid patent rights.

67.     This objectively-defined risk was either known or so obvious that it should have been known to Defendants Sprint and Verizon.  CNS seeks enhanced damages pursuant to 35 U.S.C. § 284 from Defendants Sprint and Verizon.

## COUNT ONE
## PATENT INFRINGEMENT—U.S. PATENT NO. 6,195,551

68.     Plaintiff CNS realleges and incorporates herein paragraphs 1–67.

69.     Defendants have directly infringed the '551 Patent in violation of 35 U.S.C. §271(a) by making, using, selling and/or importing infringing products and/or providing infringing services in violation of the '551 Patent.  Defendants control the manner in which their respective devices operate on an LTE network.

70.     Defendants have indirectly infringed the '551 Patent by inducing the infringement of the '551 Patent and contributing to the infringement of the '551 Patent in violation of 35

U.S.C. §§271(b) and (c), including by their respective customers.  Defendants have provided infringing handset assemblies to their customers and instructed them to assemble and use them in an infringing manner.

71.     Upon information and belief, Defendants have jointly infringed the '551 Patent, including by controlling, instructing and/or directing others to perform one or more of the claimed method steps.

72.     Defendants' aforementioned acts have caused damage to CNS and will continue to do so unless and until enjoined.

## VII.   JURY DEMAND

73.     Plaintiff CNS hereby demands a jury on all issues so triable.

## VIII.   REQUEST FOR RELIEF

WHEREFORE, Plaintiff CNS respectfully requests that the Court:

A.     Enter judgment that each Defendant infringes one or more claims of the '551 Patent literally and/or under the doctrine of equivalents;

B.     Permanently enjoin each Defendant, its agents, servants, and employees, and all those in privity with each Defendant or in active concert and participation with any of the Defendants, from engaging in acts of infringement of the '551 Patent;

C.     Award Plaintiff CNS past and future damages together with prejudgment and post-judgment interest to compensate for the infringement by Defendants of the '551 Patent in accordance with 35 U.S.C. §284, and increase such award by up to three times the amount found or assessed in accordance with 35 U.S.C. §284;

D.     Award Plaintiff CNS its costs, disbursements, attorneys' fees;

E.     Award Plaintiff CNS prejudgment and postjudgment interest to the maximum extent provided under the law; and

F.     Award Plaintiff CNS such further and additional relief as is deemed appropriate by this Court.

FIRST AMENDED COMPLAINT

Respectfully submitted,

Dated:  October 1, 2013                    By: /s/ *Andrew G. DiNovo*
                                               Andrew G.  DiNovo
                                               Texas State Bar No. 00790594
                                               Adam G. Price
                                               Texas State Bar No. 24027750
                                               Chester J. Shiu
                                               Texas State Bar No. 24071126
                                               John D. Saba Jr.
                                               Texas State Bar No. 24037415
                                               **DiNovo Price Ellwanger & Hardy LLP**
                                               7000 N.  MoPac Expressway, Suite 350
                                               Austin, Texas  78731
                                               Telephone:  (512) 539-2626
                                               Telecopier:  (512) 539-2627

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a) on October 1, 2013.  As such, this document was served on all counsel who are deemed to have consented to electronic service.  Local Rule CV-5(a)(3)(A). Nokia will be served with process in accordance with FED. R. CIV. P. 4.

/s/ *Andrew G. DiNovo*

FIRST AMENDED COMPLAINT

18